D78PLEES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          07 CR 0003 (LAP)

HIBAH LEE,

                Defendant.

------------------------------x

                                        New York, N.Y.
                                        July 8, 2013
                                        3:24 p.m.


Before:

                HON. LORETTA A. PRESKA,

                                    District Judge


                        APPEARANCES


PREET BHARARA,
    United States Attorney for the
    Southern District of New York
BY:  MARGARET M. GARNETT
    Assistant United States Attorney

GLENN GARBER
    Attorney for Defendant

D78PLEES

(In open court)

(Case called)

THE COURT:  United States I against Hibah Lee.  Is the government ready?

MS. GARNETT:  We are, your Honor.  Good afternoon. Margaret Garnett for the government.

THE COURT:  Good afternoon.  And is the defense ready?

MR. GARBER:  We are.  Glenn Garber.  Good afternoon, your Honor.

THE COURT:  Good afternoon.  Mr. Garber, have you and your client had adequate time to review the presentence report?

MR. GARBER:  We have, your Honor.

THE COURT:  Is there any reason it should not be made part of the record?

MR. GARBER:  No, your Honor.

THE COURT:  Are there any objections to the presentence report?

MR. GARBER:  No, your Honor.

THE COURT:  Did you wish to be heard on the minor role adjustment?

MR. GARBER:  Yes.

THE COURT:  Would you like to do that now?

MR. GARBER:  Yes, I would.

THE COURT:  Yes, sir.

MR. GARBER:  Can I be heard on other things, too?

D78PLEES

THE COURT:  Of course.

MR. GARBER:  Okay.  This case has been pending for a long time, but we kind of like sort of expedited the sentence, and I submitted by sentencing memo over the weekend.  I apologize for the late submission, but I am hoping I pushed the right button and cut right to the core here.

It could have been longer, but I'm addressing what is most important.  The -- you know, Hibah Lee had a troubled life, and he was very young when he got involved in this, and his brothers were involved.  It was a big case that you may have some knowledge of, it was in front of Judge Jones.  But he wound up taking a plea and cut himself out of it before the trial.

And he was -- you know, and I think I make this clear from his background, he was swept up into this.  It's not to say that we're minimizing it in any way.  But there are -- this is kind of an argument that, I guess, I worry about making. The kind of violence, to such a degree, when a lawyer gets up here and says he's got a good heart, you may roll your eyes a little bit.  And I'm not going to go crazy with it, but he did something here that speaks volumes about who he is.

And he reached out in an act of kindness in the middle of this terrible case, and tried to get help for this guy who got shot.  And I think that under 3553(a) this certainly warrants consideration, and even under 3(b)(1.2), as a minor

D78PLEES

role, because he's there, there's a robbery, there's no question about it.  There's a violent thing that could possibly happen, someone could possibly get shot, but he is not looking for this guy to get shot.  It's all about robbing some marijuana that was in a van, and this happens.

And I think that it qualifies for a minor role adjustment.  I don't cite any cases.  I'm kind of just making a common sense argument on this, sort of bundling the 3553(a) argument, as well, but I believe it warrants consideration from the Court.  And 25 years for somebody who pleads guilty is a long sentence, and I think that those circumstances, about him reaching out to 911 trying to mitigate this, not knowing the guy was going to get shot, being surprised when it happens, is worthy of that reduction.  In addition -- and that's really all I have to say about the minor the role, but I think it's important, significant.

In addition, your Honor, he does not get credit for 30 months of time because he was -- his sentence was discharged.  Now, we are going to ask that you direct the Bureau of Prisons to look at his time and make sure they do an appropriate calculation and credit him for everything that he's entitled to, but under (g)(1.3), it's my understanding that he does not get credit for that 30 months because we're now at sentencing and that sentence has been fully discharged.

If I'm wrong on that, the BOP may pick it up and

D78PLEES

correctly give him some credit for it, but I don't think he gets credit for it.  But those two things, they're independent basis for you to go down to the 25-year mandatory minimum.  I think there's sufficient justification, and I did a calculation in my letter showing you the math there, which is for the minor role.

THE COURT:  And may I interrupt you and ask, are you arguing that the minor role adjustment should be in group one or group two?  Because I know you say with the minor role adjustment, you contend that the total offense level is 28.

MR. GARBER:  38.

THE COURT:  38, I'm sorry.  Yes.

MR. GARBER:  I think that applies to group one, but I'm not actually sure.  I'm not sure.  I didn't calculate it that way.  I think it's group one.  Yeah, I'm pretty sure it's group one.

THE COURT:  Group one is the murder in furtherance of a narcotics conspiracy.

MR. GARBER:  Correct.

THE COURT:  And so it should be in Paragraph 75.

MR. GARBER:  That's right.  No, no, no.

THE COURT:  Is that right?

MR. GARBER:  No, no.  It should be -- it would be Paragraph 70.  So the adjustment for minor role offense is Paragraph 70.  Paragraph 75 is a specific offense

D78PLEES

characteristic.

THE COURT:  I'm sorry.  In the copy I have, Paragraph 75 is adjustments for role in the offense.

MR. GARBER:  That's not the one we have, and I actually e-mailed one to the Court.

THE COURT:  Here's the one I have.

MR. GARBER:  But you may have a more current one with the recommendation by the --

THE COURT:  The date, it was approved on Page 31, is June 14.  Oh, my God, 2010?  How did that happen?

MR. GARBER:  Ours or March 31st, 2010.

THE COURT:  All right.  Do you want to take a look at this?

MR. GARBER:  Yes.  And Miss Garnett and I can look at it, and this can become the official PSR.

THE COURT:  Yes, sir.

MR. GARBER:  Thank you.  Sorry.

THE COURT:  Yes, counsel.

MR. GARBER:  There are actually a couple of things there that are concerning me.

THE COURT:  Sir?

MR. GARBER:  Because I did not see, and I don't know why by the passage of time that PSR, but I've digested it and I've also gone over it with Miss Garnett.  There's some good things in there and some bad things.  There is this point about

D78PLEES

obstruction, which I was not prepared to make an argument on that I still think, you know, a 25-year sentence is warranted.

I would point out, though, that that revised PSR does indicate that the government acknowledges that Mr. Lee did call 911 in an effort to mitigate the harm, which I think is a very significant mitigating factor. I don't -- I guess I'm a little concerned because I may need to ask for a continuance so I could address that aggravating factor because they're now putting a two-point enhancement in this case. If the Court is inclined to -- I don't want to throw the ball in your court necessarily -- but inclined to not impose the mandatory minimum, I am going to ask --

THE COURT: It's the Court's inclination at this minute to impose the mandatory minimum. I haven't heard the government yet.

MR. GARBER: Okay.

THE COURT: And I'll give you another chance if I change my mind or my inclination.

MR. GARBER: Thank you for that.

THE COURT: How's that?

MR. GARBER: I appreciate that.

THE COURT: Okay.

MR. GARBER: Because then between the two points that I raised, which is the contacting the 911 or the discharged term, I do think the mandatory minimum of 25 is appropriate.

D78PLEES

And thank you.

I also want to point out that my client's two aunts and his mother are here to show their support of him, and I believe he has a few words that he wants to say as well.

THE COURT:  May I clarify, please?  Does that then mean that the total offense level is 40, if you get the minor role adjustment with the obstruction enhancement?

MR. GARBER:  Yes.

THE COURT:  Okay.  I just want to be sure.  Okay.  Let me do -- Ms. Garnett, do you want to be heard on these issues before I make the findings about the total offense level?

MS. GARNETT:  Yes, I would, your Honor.

THE COURT:  Yes, ma'am.

MS. GARNETT:  It's somewhat of a technical argument because on 3553(a) grounds, I think Mr. Garber is correct, but I think, as a legal matter, Mr. Lee does not qualify for a minor role adjustment for the murder of Oneil Johnson.  The murder arose in the course of a robbery.  Mr. Lee was intimately involved in planning that robbery and how it was to be carried out.

I think none of the participants anticipated at the start of the robbery that Mr. Johnson would be shot and killed. That was not the plan, but it did happen and qualifies as an intentional murder.  And I think minor role adjustment for this kind of circumstance is reserved for a defendant who is merely

D78PLEES

a driver or a lookout or someone not fully involved in the planning, or who is being held responsible for conduct that goes far beyond what their personal conduct was.  And so I think, as a guideline matter, Mr. Lee simply does not qualify for a minor role adjustment.

On the other hand, I think that everything Mr. Garber has said about the facts of Oneil Johnson's death are correct and are properly considered by your Honor's 3553(a) factors. The shooting of Mr. Johnson by Mr. Lee's co-conspirator was not planned, was not intended to occur.  Although Mr. Lee did know that two of his -- two of the four co-conspirators were armed, and they certainly were prepared to do what was necessary to carry out the planned robbery.

But the actual shooting sort of happened in the heat of the moment, and Mr. Lee did immediately go to Mr. Johnson's aid.  He called 911.  He stayed on the phone, reported the address where Mr. Johnson was, which placed himself at significant jeopardy of being caught participating in a very significant crime.  So all of that is true, and I think it is very properly the considered under 3553(a).  I just think, as a legal matter as a precedent, it doesn't qualify.

THE COURT:  You're going to get another chance to speak.

MS. GARNETT:  Oh, sure.  I just wanted to update another few things in the PSR.

D78PLEES

THE COURT:  Yes, ma'am.

MS. GARNETT:  The sentences for the four trial defendants, Hisan Lee and Delroy Lee, who are Mr. Lee's brothers, as your Honor knows, they both were convicted of two murders in aid of racketeering each; so they received mandatory life terms at trial.  Selbourne Waite, who is Mr. Lee's cousin, received a mandatory term in excess of 100 years due to multiple 924(c) convictions.  Levar Gayle, who was the fourth trial defendant, and also another cousin of Mr. Lee received a sentence of 20 years.  In terms of relative culpability, Mr. Gayle, that sentence arises entirely from the murder of Oneil Johnson, who was one of the four conspirators in that robbery.

In contrast to Mr. Lee, he has very limited other criminal conduct, but he was, I would say, an equal participate to Mr. Lee in the Oneil Johnson incident, and he received, after a trial, a sentence of 20 years.

THE COURT:  And was there a mandatory minimum associated with that?

MS. GARNETT:  No, ma'am.  He was convicted of a 924(j) count; so no mandatory minimum.

THE COURT:  Thank you.  Mr. Garber, it is still my intention to impose the mandatory minimum.  If you would like to be heard further, I'm happy to hear you further.

MR. GARBER:  I don't need to be heard further.

D78PLEES

THE COURT:  Mr. Lee, would you like to speak on your own behalf?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Would you do it now, please.

THE DEFENDANT:  Yes, ma'am.  First of all, I would like to say that I'm very remorseful for what took place during this crime, and I say that with the utmost sincerity.  However, I'm not this person that this indictment depicts me to be, with all due respect to Miss Garnett.  However, I know I must be held accountable for my actions.  That's why I stand before you before you today willing to accept that responsibility.

With that said, your Honor, I've been incarcerated for a long time, nine years.  I've lost a lot.  I've experienced a lot.  It's been a very tumultuous time.  I seen the pain and anguish that I caused my family, and I never knew that by me making poor decisions would have such an effect on my loved onces, and I'd like to say that I apologize to my moms and my aunts.

With that said, your Honor, I kind of took this night as a blessing in disguise, for I actually gained more than I lost.  I've come to know who I am as a person.  I've come to know what it is I want out of life, and I think I'm just a better person in general.  When I look back at the person I was nine years ago and I look at the person I am today, I see a totally different person.  I know I'm not the person I could be

D78PLEES

yet.  I know I'm not the person I should be yet.  But I know I'm not the young, immature young man that I was nine years ago.

With that said, I know it's an uphill battle, and I'm just ready to get this over with, by the grace of God, make the rest of my family at peace.  Thank you, your Honor.

THE COURT:  Very well said, sir.  Miss Garnett, do you wish to speak for the government?

MS. GARNETT:  Your Honor, I think the PSR fairly sets out Mr. Lee's extensive criminal history; so really, the only thing I would say that might be useful to your Honor is just to confirm I have reviewed Mr. Garber's submission.  I just want to confirm that the government agrees with the factual accuracy of the matters set forth in Mr. Garber's submissions.

THE COURT:  Thank you.  Anything else, Mr. Garber?

MR. GARBER:  No, your Honor.

THE COURT:  Thank you.  Counsel, with respect to the offense level computation, I accept the findings of the presentence report set forth at paragraph 68 through 96, which conclude that a total offense level of 42 is appropriate.

With respect to our discussion of the proposed minor role adjustment, I agree with the government that, as a technical matter in this type of offense, Mr. Lee's participation does not qualify for a minor role adjustment.

With respect to the obstruction enhancement, the

D78PLEES

telephone call to the potential witness, which is not denied, certainly qualifies as obstruction.

With respect to the criminal history, I accept the findings of the presentence report set forth at paragraphs 97 through 111, which conclude that a criminal history category of one is appropriate.

Mr. Garber, just for the record, I have your two submissions dated July 6th and July 6th. I take it there are no other written submissions I should be looking at?

MR. GARBER: No.

MS. GARNETT: No.

THE COURT: Thank you. With respect to the nature and circumstances of the offense, the total offense level accurately describes the nature and circumstances of the offense. What it does not describe, however, is the actions which Mr. Lee took in an effort to assist Mr. Johnson. As counsel have both pointed out, those actions put Mr. Lee in great jeopardy of being apprehended, which, of course, he was. But the kindness and human consideration which Mr. Lee showed on that occasion is something which should be considered, and I will consider it in imposing sentence.

With respect to the history and characteristics of the defendant, of course, Mr. Lee is in the lowest criminal history category, but as the presentence report points out, he was involved in this criminal undertaking for some years, starting

D78PLEES

I believe at age 16.  Again, however, with respect to his history and characteristics, I take into account the assistance he rendered to Mr. Johnson in his hour of need.

With respect to the Paragraph 2 factors, a lengthy incarceratory sentence is required to reflect the seriousness of the offense and to provide just punishment.  It is required for public deterrence.  Given Mr. Lee's well-chosen words today, it's probably not so much required for protecting the public from further crimes of this defendant, but as we have all acknowledged, there is a statutory mandatory minimum at work here.

And, of course, as to paragraph D, the need for educational or vocational training, et cetera, that factor is of very little import here.  I've taken into account the paragraph 3, 4 and 5 factors and, at this point, the statutory mandatory minimum is the weightiest factor controlling the sentence.  With respect to paragraph 6, I do not believe there will be a concern about unwarranted sentencing disparities, particularly in light of the statutory mandatory minimum.  And Paragraph 7 is not relevant here.

Accordingly, counsel, it's my intention to impose the statutory mandatory minimum of 25 years, followed by a period of three years of supervised release on each count, to run concurrently for a total of three years.  It's my intention to impose the recommended special conditions of participation in a

D78PLEES

substance abuse program and submission to a search.  It is not my intention to impose a fine on the finding that Mr. Lee is not able to address a fine.  It is my intention to impose the $200 special assessment.

Is there anything to be said here about forfeiture, counsel?

MS. GARNETT:  We're not seeking forfeiture in the case, your Honor.

THE COURT:  All right.  Is there any reason such a sentence should not be imposed, counsel?

MS. GARNETT:  None known to the government, your Honor.

MR. GARBER:  No, your Honor.

THE COURT:  Thank you.  Mr. Lee?

THE DEFENDANT:  Yes.

THE COURT:  You're sentenced, sir, to 25 years incarceration.  Following that time, you'll spend a period of three years on supervised release on each count, to run concurrently, for a total of three years.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  During that time, you'll comply with all of the standard terms and conditions of supervised release. Among them are that you not commit another federal, state or local crime; you not illegally possess a controlled substance; and you not possess a firearm or other destructive device.

D78PLEES

THE DEFENDANT:  Yes, ma'am.

THE COURT:  In addition to those, and all of the other standard terms and conditions of supervised release, during that time you'll participate in a program approved by the probation office for substance abuse, and that program will include testing to determine whether you've returned to the use of drugs.

The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider as approved by the probation officer.  And sir, you might be required to contribute to some or all of the costs of that program, depending on your ability to pay and the availability of third-party payment.

In addition, sir, during the period of supervised release, you'll submit your person, residence, place of business, vehicle and any other premises under your control to a search on the ground that the probation officer has reasonable belief that contraband or evidence of a violation of the terms and conditions of your release may be found there. The search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to such a search may be grounds for revoking your supervised release.  It will be your obligation to inform other residents of the premises that the premises might be subject to a search under this condition.

As I mentioned, I do not impose a fine but must impose

D78PLEES

the mandatory $200 special assessment, and that should be paid promptly. It's my duty to inform you, sir, that unless you've waived it, you have the right to appeal this sentence, and you might have the right to appeal in forma pauperis, which means as a poor person, with a waiver of certain fees and expenses.

Mr. Garber, is there a recommendation for a facility?

MR. GARBER: Yes. I was going to ask you to make two recommendations to the Bureau of Prisons; one, that he be placed in a facility as close to the New York City area as possible.

THE COURT: It is so recommended, so that Mr. Lee's family, who's present here, is able to visit him easily.

MR. GARBER: He's also asking for Otisville. I don't know if you can go that specific on this.

THE COURT: It's the Court's recommendation that Mr. Lee be designated to Otisville for ease of visiting by his family.

MR. GARBER: Thank you.

THE DEFENDANT: Thank you, your Honor.

MR. GARBER: And the other is something that I mentioned earlier. Because of the two cases, I would ask that they be directed to make sure that he gets credit for all time that he's entitled to, based on his incarceration on the prior matter.

THE COURT: It's the Court's recommendation and

D78PLEES

request that the Bureau of Prisons look closely to be sure that Mr. Lee is -- has the benefit of any time credit that he is entitled to as a result of his incarceration on the prior case.

MR. GARBER:  Thank you.

THE COURT:  Mr. Lee?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You spoke beautifully.  You acknowledged your family and apologized.  That's the right thing to do.  I take you at your word, and you sound like you have done very well in becoming a better person.  You spoke so beautifully, sir, you probably have a lot to share with other folks.  I think you can help a lot of other individuals get to where you are as a person, and I encourage you to do that.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Thank you, sir.  Counsel, thank you for your assistance.

MR. GARBER:  You're welcome.

THE DEFENDANT:  Thank you, your Honor.

THE COURT:  Miss Garnett?

MS. GARNETT:  Your Honor, just one matter.  At this time, the government would move to dismiss the open counts and underlying indictment.

THE COURT:  So ordered.  Thank you, counsel.

MS. GARNETT:  Thank you, your Honor.

(Adjourned)